WILLIAM H. CHEVERONT and CHAPMAN J. STUART, trading as CHEVERONT & CO. *vs.* ANTON TEXTOR.

*Composition among Creditors and Agreement—When a fact is not Conclusively Established by the Verdict of a Jury—Evidence.*

A. T., the defendant, being largely indebted to sundry persons, signed and sealed this proposition to his creditors: "I, A. T., of the City of Baltimore, trading as J. C. T. & B., do hereby agree with · each and every creditor of J. C. T. & B., who shall accept and sign this agreement, written below, to pay to each and every creditor so accepting this agreement, one-fourth of the claim of such creditor against J. C. T. & B., in cash, and to deliver to each creditor so accepting said agreement, two notes of J. C. T. & B., dated the 9th June, 1876, drawn to their own order, and endorsed by H. S. of said city, each of said notes for one-fourth of the claim of the creditor so accepting said agreement; said cash and notes to be accepted by all my creditors in full satisfaction of their respective claims against J. C. T. & B.; one of said notes to be payable twelve months after date, and the other eighteen months after date, without interest. And I, H. S., do hereby covenant and agree with each and every creditor of J. C. T. & B. who shall accept this agreement, and sign the same, that I will endorse two of said J. C. T. & B's notes each for one-fourth of the claim of such creditor as agreed upon herein by the said J. C. T. & B. Witness our hands and seals, this 9th June, 1876." The plaintiffs, C. & Co., with a number of other creditors, if not all, by their attorneys, signed the agreement and accepted the composition, and were paid the cash stipulated and received the notes, which were paid. They afterwards sued A. T. to recover the remainder of their claim and also the claims assigned to them, of two other firms. With other pleas, the defendant specially set up the composition and agreement and pleaded payment and release, and the plaintiffs replied, that the agreement and release were procured by fraud practiced on them, and also for a further replication, that in a suit by S. & B., creditors of the defendant and who had agreed to the composition, against him to recover a debt due before the 9th June, 1876, in which the same pleas were pleaded

as in this case a verdict was rendered against the defendant for the amount claimed, and that judgment was entered, and paid. The fact found by the jury, and which formed the basis of the judgment, was relied on by the plaintiffs as working an estoppel upon the defendant. A demurrer was entered to this replication, which was sustained by the Court below, HELD:

That the demurrer was properly sustained.

Under circumstances like the above stated composition agreement presents, the only way to secure perfect equality, in case of fraud on any one brought into it, would be by a proceeding directed against the composition, in which all the parties interested could be allowed a hearing and were made parties to the suit.

At the trial the plaintiffs offered to show by the defendant, as a witness, that after the verdict against him in S. & B's suit he had settled with some other of the creditors for the balance due them, after they had received what was agreed on under the composition, and that he had made settlements of that kind with creditors who had not sued him. HELD:

That the Court below was right in rejecting the proffered proof.

APPEAL from the Circuit Court for Howard County.

This suit was instituted in the Superior Court of Baltimore City, and removed to the Circuit Court for Howard County for trial, upon the suggestion and affidavit of the defendant, and there tried.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial, after the rejection by the Court below of the offer of the testimony set out in the opinion. The plaintiffs offered the following prayer:

That if the jury find from the evidence, that the plaintiffs and their assignors, were creditors of the defendant; and also find the assignments to the plaintiffs, of the claims of Lewin & Co., and O'Neal, Cheveront & Company; and that the plaintiffs and their said assignors, were induced to enter into the settlement of the 9th June,

1876, with the defendant, by reason of the statement made to them, by the defendant, of the condition of his affairs, in the letter of the 27th May, 1876, read in evidence; and that they made the said settlement on the faith of said statement, believing the same to be a true and fair statement; and if they further find that the said statement was substantially untrue, and was made by the defendant with intent to deceive the plaintiffs, and their said assignors, and to induce them to make said settlement, then the plaintiffs are entitled to recover so much of said claims so settled as remained unpaid and due at the time this suit was brought, with interest thereon—the finding of interest, however, being in the discretion of the jury.

And the defendant offered the two following prayers:

1. That fraud is odious in contemplation of law, and not to be presumed, and the burden of proof is on the plaintiffs to overcome such legal presumption by evidence satisfactory to the jury.

2. If the jury shall find from the evidence, that the defendant was indebted to the plaintiffs and their assignors, in the amount testified to by the witness Cheveront, and afterwards the said plaintiffs and their assignors, and other creditors of the defendant, by their attorneys, together with the defendant and Henry Smith, signed the agreement dated June 9th, 1876, offered in evidence, and shall further find that the defendant and the said Henry Smith complied with the terms of said agreement, by the payment of the one-fourth cash, and the endorsement and delivery of the promissory notes as therein provided, to the plaintiffs or their assignors, or that they accepted an equivalent in cash, in lieu thereof, as testified to by said plaintiff, then the plaintiffs cannot recover, unless the jury further find that the defendant falsely and fraudulently represented to the plaintiffs, and their assignors, the amount of his assets to be materially smaller

than they really were, with intent to deceive said creditors, and to induce said creditors to enter into said agreement, and by means of such misrepresentations induced said creditors to enter into said agreement; and that said creditors relied upon such representations in entering upon said agreement, and believed them to be true; and that if said fraud had not been practiced, the said contract could not have been executed; and that they had not the means of ascertaining their falsehood.

The Court granted the plaintiffs' prayer, and granted the defendant's first prayer and rejected his second, and in lieu of the second, the Court gave the following instruction to the jury:

If the jury shall find from the evidence, that the defendant was indebted to the plaintiffs, and their assignors, in the amount testified to by the witness Cheveront, and afterwards the said plaintiffs, and their assignors, and other creditors of the defendant, by their attorneys, together with the defendant and Henry Smith, signed the agreement, dated the 9th June, 1876, offered in evidence; and shall further find that the defendant and the said Henry Smith complied with the terms of said agreement, by payment of the one-fourth cash, and the endorsement and delivery of the promissory notes as therein provided, to the plaintiffs and their assignors, or that they accepted an equivalent in cash, in lieu thereof, as testified to by said plaintiffs, then the plaintiffs cannot recover; unless the jury further find that the defendant falsely and fraudulently represented to the plaintiffs, and their assignors, the amount of his assets to be materially smaller than they really were, with intent to deceive said creditors, and to induce said creditors to enter into said agreement, and by means of such misrepresentations induced said creditors to enter into said agreement, and that said creditors relied upon such representations in entering upon said agreement, and believed them to be true, and that if

said fraud had not been practiced, the said contract would not have been executed.

The plaintiffs excepted, and the verdict and judgment being for the defendant, the plaintiffs appealed.

The cause was argued before BARTOL, C. J., ALVEY, ROB-INSON and IRVING, J.

*A. H. Robertson and Charles Marshall,* for the appellants.

We maintain that the judgment recovered by *Shaeffer & Bonafield* was conclusive as to the obligation of the agreement of June 9th, upon the plaintiffs.

The agreement of June 9th, 1876, on its face is not an agreement with each creditor separately, but is expressly an agreement with *all* the defendant's creditors.

The replication alleges that in the case in the United States Circuit Court, Shaeffer & Bonafield had successfully assailed the agreement for "the said fraud of the defendant practiced upon said Shaeffer & Bonafield, and the other creditors of the defendant who accepted the same."

Now, the effect of the judgment in the United States Court was to declare Shaeffer & Bonafield to be discharged from the agreement of creditors of June 9th, and enable them to recover in full. That agreement, which was a single agreement on the part of all the creditors on the one side and the defendant on the other, was conclusively declared not to be binding on one of the creditors, because his acceptance of its terms had been procured by fraud. It might be that the judgment would not preclude the defendant in this case from denying that the acceptance of the agreement by the plaintiffs had been procured by fraud; but that is not the issue made by the demurrer.

The question is, whether any one of the creditors who became a party to that agreement is bound by it, if it be

not binding upon all by reason of the acceptance of it by one or more having been obtained by fraud?

They all unite in an agreement to take less than the amount due them, but all are to be paid alike. The defendant deceives one of the number, and procures him to unite with the others by fraud, upon the discovery of which, that creditor is released from the contract, and allowed to recover his whole debt. The other creditors, however, who became parties to the agreement with the creditors so discharged, and whose agreement to accept its terms was a joint, and not a joint and several agreement, we contend, must be released also by the release of their co-contractor.

We submit that the fact that the acceptance of the agreement of June 9th, 1876, by Shaeffer & Bonafield had been procured by fraud, operates *per se* to render the agreement fraudulent as to the other creditors who accepted that agreement as joint contractors with Shaeffer & Bonafield, and estopped the defendant from setting up the agreement against the other creditors. 1 *Addison on Contracts, secs.* 264, 380; *Boyd vs. Hind,* 25 *L. J. Exch.,* 246, *and* 1 *H. & N.,* 938; *Higgins vs. Pitt,* 4 *Exch.,* 312; *Leicester vs. Rose,* 4 *East,* 372; *Smith vs. Stone,* 4 *G. & J.,* 311; *Gardner vs. Lewis,* 7 *Gill,* 391, 400.

The next exception arises from the rejection by the Court of the evidence offered by the plaintiffs.

The plaintiffs had offered proof tending to show that the agreement of June 9th, 1876, had been procured by the fraudulent representation made by the defendant to his creditors of his condition. The defendant had undertaken to prove that the creditors had compromised with him without being influenced at all by misrepresentations of his condition, and that he had made no false representations. The plaintiffs offered to prove by the defendant himself that, after the decision of the suit of Schaeffer & Bonafield against him, the defendant had settled with

some other creditors, who were parties to the agreement of June 9th, for the balance of their claims, in whole or in part, and that he had made settlements of that kind with creditors who had not sued him, and had offered to make such settlements. We submit that the evidence was clearly admissible.

The issue was as to fraud, and the evidence rejected bore not only directly on that question, but on the *bona fides* and sincerity of the defendant in testifying as he had done to the integrity and fairness of the agreement.

Had not the jury a right to have his acts, as well as his declarations, relating to this subject? Upon such an issue any evidence, however slight, is admissible. *Davis vs. Calvert,* 5 *G. & J.,* 269; *Cook vs. Cook,* 43 *Md.,* 522; *Curtis vs. Moore,* 20 *Md.,* 93; *Marshall vs. Haney,* 4 *Md.,* 498.

*Henry E. Wootten* and *C. Dodd McFarland,* for the appellee.

The demurrer to appellants' additional replication to appellee's third plea was properly sustained. The questions arising under the pleadings in this case were not *res adjudicata.* The case tried in the Circuit Court of the United States had no such effect. That suit was brought to recover a different debt; " a certain debt claimed to be due to them from the said defendant "—a different subject-matter. It was a suit between different parties. Neither the plaintiffs nor their assignors were parties to the former action. They were not concluded by it. They had no right to appear in that case and produce witnesses, or cross-examine witnesses on the other side, or in any manner direct its proceedings, or appeal from the judgment. If the verdict in the former case had been in favor of the defendant, he would have had no right to plead the verdict against the plaintiffs. *Alexander vs. Waller, et al., Lessee,* 8 *Gill,* 247; *Cecil vs. Cecil, et al.,* 19 *Md.,* 78, 79; *Gaunt vs. Weinman,* 3 *Bing., N. S.,* 69.

The offer of testimony by the appellants assumed that there had been a verdict against the defendant in the Circuit Court of the United States. This fact has not been proved and had been excluded from the jury by sustaining the demurrer. The Court when called on to determine the legality of a question propounded to a witness must decide upon it in its entirety, and if any part of it is illegal, the whole must be overruled. *Balto. & Ohio R. R. Co. vs. Thompson,* 10 *Md.,* 76; *Carroll vs. Granite Manuf. Co.,* 11 *Md.,* 399.

The Court's instruction is fully sustained by the case of *McAleer vs. Horsey,* 35 *Md.,* 439.

IRVING, J., delivered the opinion of the Court.

Anton Textor, trading as J. C. Textor & Bro., being largely indebted to sundry persons, on the 9th day of June, 1876, signed and sealed this proposition to his creditors :

"I, Anton Textor, of the City of Baltimore, trading as J. C. Textor & Bro., do hereby agree with each and every creditor of J. C. Textor & Bro., who shall accept and sign this agreement written below, to pay to each and every creditor so accepting this agreement, one-fourth of the claim of such creditor against J. C. Textor & Bro., in cash, and to deliver, to each creditor so accepting said agreement, two notes of J. C. Textor & Bro., dated the ninth day of June, in the year 1876, drawn to their own order and endorsed by Henry Smith, of the City of Baltimore, each of said notes for one-fourth of the claim of the creditor so accepting said agreement, said cash and notes to be accepted by all my creditors in full satisfaction of their respective claims against J. C. Textor & Bro. ; one of said notes to be payable twelve months after date, and the other eighteen months after date, without interest.

"And I, Henry Smith, do hereby covenant and agree with each and every creditor of J. C. Textor & Bro.,

Cheveront & Co. *vs.* Textor.

who shall accept this agreement and ‚sign the same, that I will endorse two of said J. C. Textor & Brother's notes, each for one-fourth of the claim of such creditor, as agreed upon herein by the said J. C. Textor & Bro. Witness our hands and seals this 9th day of June, in the year 1876."

A number of the creditors, if not all, by their attorneys signed the agreement and accepted the composition. The appellants were of that number, and were paid the cash stipulated for in the agreement, and received the notes for the deferred payments, which were paid. This suit is to recover the remainder of their claim not provided for in the composition agreement.

The *narr.* is in *assumpsit* for goods bargained and sold to the plaintiffs, and also for goods sold and delivered to O'Neal, Cheveront & Co. and Geo. Lewin & Co., who had respectively assigned their claims to the plaintiffs.

Defendant pleaded: 1. Never indebted. 2. Never promised. 3. Specially setting up the composition agreement. 4. Payment, and 5. Release.

The third plea set out, that after the sale and delivery of the goods in the declaration mentioned, the defendant made certain promissory notes to the plaintiffs for their claim, and afterwards made the composition offer (which has already been recited.) It then sets up that the plaintiffs, by attorneys duly authorized, accepted the offer and agreement, and that he and the said Henry Smith complied with all the terms of the agreement, by paying the cash and executing the notes as agreed (Henry Smith being then and ever afterwards solvent,) and that the plaintiffs accepted the cash and notes in full discharge of their claim. Issue was joined on the first and second pleas. 2. To the third plea plaintiffs replied that they did not accept the cash and notes in payment. 3. That said agreement and release were procured by fraud practiced on them. Fourth and fifth pleas were traversed, and to the

fifth plea further replication was made, that the release was procured by deceit, misrepresentation and fraud practiced upon them.

Before trial plaintiffs filed an additional replication to the fifth plea, which in substance is as follows: that before the institution of this suit a certain Shaefer & Bonafield, creditors of the defendant, instituted suit against him (the defendant) in the Superior Court of Baltimore City to recover a debt due them for indebtedness before the 9th of June, 1876; that defendant appeared and pleaded the same plea which is now by his third plea interposed here, and that same replication as is made here was there made: viz., that the agreement was procured by the fraud of the defendant practiced on Shaeffer & Bonafield; that issue was joined thereon and the cause was removed to the Circuit Court of the United States for the District of Maryland, in which Court, in November, 1877, a trial was had, and a verdict was rendered against the defendant for the amount claimed, that judgment was entered, and the same was paid, " and the plaintiffs further in fact say that the said agreement of the 9th of June, 1876, set out in said cause above set forth, and which in the same agreement set out in the third plea in this case, was made and entered into on their behalf and on behalf of each of their assignors by the same attorneys, and at the same time, who assented thereto, at same time for Shaeffer & Bonafield, and that they and their assignors and the said Shaeffer & Bonafield did assent to and enter into said agreement set out in said third plea, at the same time and through the same attorneys, and that it was in fact but one agreement, as well the creditors who assented to and became bound thereby, including therein the said plaintiffs and their said assignors, wherefore the said plaintiffs say, that by force of said judgment of said Circuit Court of the United States, the said defendant is estopped from claiming any right as against them, the said plaintiffs

under and by virtue of said agreement of the 9th of June, 1876, set out in the third plea," &c.

To this replication a demurrer was entered, and the demurrer having being sustained by the Court below, it forms the first subject of review. In support of their replication appellants' counsel insist, that this agreement was a mutual agreement; that the agreement of the other creditors to take less than their respective claims, was the consideration for the agreement of each of the creditors to accept the composition; and that inasmuch as the rule is well settled, that if there be a private agreement by which one creditor, who signs the agreement is nevertheless to get his whole claim or a larger proportion than the other creditors, such understanding is a fraud on the rest, and will avoid the contract, it must also follow if one of the creditors has been induced by the fraudulent representations of the debtor to enter into the composition, and afterwards on issue made on that fact, secures a verdict in his favor, and gets his whole claim, that *such fact* must also avoid the whole agreement, and relieve all who signed it from its operation. The fact in this case having been found that Shaeffer & Bonafield were induced by fraud to accept the agreement, and they having obtained satisfaction of their whole debt, the appellants insist it is now incontrovertible, and the fact so found estops defendant in this suit.

We find a great many cases where the creditor, who has exacted more than he would receive by the composition as a condition of his signing the agreement, has been nonsuited or enjoined, on its appearing that his cause of action was so tainted with fraud upon the other creditors and oppression of the debtor. Upon the suit of the creditors and debtor, or of the latter alone, the additional notes or securities have been decreed to be delivered up. *Leicester vs. Rose,* 4 *East,* 372; *Jackson vs. Sadler,* 15 *Vesey, Jr.,* 52; *Jackman vs. Mitchell,* 13 *Vesey, Jr.,* 581; *Mawson v.* 53.

*vs. Stock,* 6 *Vesey, Jr.,* 300 ; *Eastbrook vs. Scott,* 3 *Vesey, Jr.,* 456 ; *Jackson vs. Davidson,* 4 *B. & A.,* 695 ; *Russel vs. Rogers,* 10 *Wendell,* 473 ; *Jackson vs. Lomas,* 4. *T. R.,* 166 ; *Case vs. Gerrish,* 15 *Pick.,* 49 ; *Cockshot vs. Bennett,* 2 *T. R.,* 763 ; 1 *P. Wms.* 768 ; 1 *Adkins,* 105 ; 11 *A. & E.,* 1033 ; *Buck vs. Cole,* 4 *Sandford,* 79, *et al.* In none of these cases does the composition agreement itself appear to have been disturbed. On the contrary, the decisions proceed on the hypothesis that the composition stands. On a case made, a Court of *equity,* with all the parties before it, would set aside an agreement thus secured to the injury of the parties compounding ; but we have found no case where at law *one* creditor has been permitted to abandon the agreement and *recover* notwithstanding it; or showing that one creditor has thus been dealt with by the debtor. In the case of *Smith vs. Stone,* 4 *G. & J.,* 310, the defence was interposed that deceit was practiced on the plaintiff by one of the creditors, who signed, making an agreement outside to receive more, and actually receiving more, and it was decided that, according to the circumstances of that case, it did not appear that any fraud or deceit had been practiced on the plaintiff, inasmuch as it did not appear that in that case the agreement was an agreement with each other. But it is conceded by the Judge that if it had been otherwise, he might have relied on the fraud. *Small vs. Brackley,* 2 *Vernon,* 602, which is cited to sustain that position, imperfectly sustains that *obiter dictum,* but assuming such is the law in such case, it does not follow that the defence made in this case is a good one, as pleaded in the replication to which demurrer has been entered.

Counsel for defendant insist that this agreement was not an agreement of the creditors with each other, but a simple acceptance by each creditor of a proposition from the debtor. It certainly does not appear anywhere that, by express language, it was an agreement by the creditors

*inter sese,* and it is not so pleaded in the additional replication. It bears strong analogy to the ·case passed upon by Judge STEPHEN, in 4 *G. & J.,* 310. But, as all the modern authorities lay it down that all compositions are, in their nature, agreements of the creditors with each other, as well as the debtor, we shall so treat this agreement, without deciding it to be such. 4 *Sandford,* 79, *and* 57 *Indiana,* 371.

It is not necessary that all the creditors of a debtor shall unite in the agreement to make it a binding contract. Any number less than the whole may so agree, and it is binding on those who do agree. *Norman vs. Thompson,* 4 *Exchequer,* 754; *Boyd vs. Hind,* 1 *H. & N.,* 944. In this case it does not appear that all the creditors united in the agreement, nor is it alleged that, without Shaeffer & Bonafield's signature, the plaintiffs and other creditors would not have made the agreement. Without their signature sufficient consideration for the agreement remained. If the partial failure of consideration were such as to be good ground for setting the composition agreement aside, the proceeding by which it was to be set aside should be one in which all the parties to the composition should have opportunity to be heard. In the case of a creditor contracting for more than the composition agreement was to give him, *he* practices a fraud himself on the other creditors, by which he induces them to take less than he is to get, or less security than he is to get. If he gets more or other collaterals, he to that extent diminishes the ability of the creditor to meet his engagements with the rest. The creditor practices the fraud. In this case it is alleged that Shaeffer & Bonafield were deceived by the debtor into the arrangement, and that fact has been found by a jury, and he has been released from the operation of the contract of composition. These appellants made a like issue that *they* were drawn into the arrangement by fraud and deceit, but on that issue the jury found ad-

versely to them. No issue was in this case made for the jury that Shaeffer & Bonafield were so drawn into the arrangement, but they rely on the issue that such fact has been determined by the verdict of a jury and the judgment of a Court of competent jurisdiction thereon; to which issue so tendered the demurrer has been interposed. We think the Court below properly sustained the demurrer. Although the judgment is pleaded as an estoppel, that was disavowed in argument, and the fact found by the jury, and which formed the basis of the judgment, was relied on as working an estoppel upon the appellee. Estoppels are always mutual and reciprocal. *Herman on Estoppel, and Alexander vs. Walter,* 8 *Gill,* 239. When the parties are not the same in an action at law, the judgment or finding of the jury in another cause, where only one of the litigants (as is the case here) was a party, cannot be admissible as evidence, or by way of estoppel, because the parties not being the same, there is no mutuality. It is *res inter alios acta.* Strangers are not *bound* by, nor can they *take advantage* of, an estoppel growing out of proceedings to which they were strangers, and had no opportunity of being heard. *Herman on Estoppel,* 120. Estoppels by judicial determination can only be relied on by parties or privies. Unless Shaeffer & Bonafield could be regarded as in legal privity with the appellants, the result of the trial between them and the appellee can not be availed of in any way by the appellants. *Herman on Estoppel,* 163. If the verdict had been the other way in Shaeffer & Bonafield's suit, it would have interposed no bar to the appellants raising the same issue in a proper way for his relief. If such had been the case, having had no opportunity of being heard, if he was to be affected by the fact in issue, it is clear he could not be bound. If the fact had been found otherwise, judgment would have been rendered in their favor, and would been a perpetual bar to another suit by them.

Then if the appellants in their suit had secured a different verdict on their issue of fraud practiced on them, and had recovered judgment for their claim, the equality of the creditors under the agreement would have been destroyed, as much as it appears to be by the result of the *Shaeffer & Bonafield Case*, and the result of the appellants' suit. The argument of the appellants' counsel, so ingeniously and ably presented, respecting the inequality resulting from the two findings cannot there-fore avail. Suppose the appellants were here suing Textor and Smith for the deferred payments provided for in the composition, could Textor and Smith jointly or separably be permitted to plead in defence, and by way of bar, that in the *Shaeffer & Bonafield Case*, it was decided that such fraud was practiced on the plaintiffs in that suit as avoided the contract entirely, and the contract being thus found fraudulent was binding on nobody, and they were discharged from the obligations which the composition agreement imposed on them? From such a result of a finding so obtained the legal mind instinctively shrinks. Yet estoppels being reciprocal such must be the result, if the proposition contended for by appellants' counsel be true. We cannot accept it as true. A fact so found, and affecting the validity of the contract in which so many are interested, cannot be held as finally adjudicating the rights of those who were not parties to the proceeding in which the finding was procured. Under circumstances like this composition agreement presents, the only way to secure perfect equality, in case of fraud on any one brought into it, would be by a proceeding directed against the composition, in which all the parties interested could be allowed a hearing, and were made parties to the suit.

A fact once found by a jury is not necessarily incontro-vertible, and conclusively established by such verdict. In *Warford vs. Colvin*, 14 *Md.*, 532, which was an action of ejectment, where the parties were the same, (except that

in one case the party was sued as executor and in the other individually,) the verdict of the jury on the issues framed in the Orphans' Court, as to the testamentary capacity, &c., was not held conclusive; but the fact was allowed to be tried again, because the *judgment* rendered admitting the will to probate, was only *prima facie* by the statute so far as the *land* was concerned. Reference is made to this case, merely to show that verdicts do not always establish the fact found thereby. The demurrer in our judgment having been properly sustained, the instruction of the Court in lieu of the defendant's second prayer was also properly given, and the second prayer of defendant was properly rejected. It and the demurrer raised the same question, and the same reasons apply to each. There was no issue or proof upon which the prayer could be extended beyond the effect of representations on the plaintiffs or their assignors.

Exception was taken by the appellants to the refusal of the Court to allow them to show by the appellee, as a witness, that after the verdict against him in the suit of *Shaeffer & Bonafield*, who had settled under the agreement of 9th June, 1876, as the appellants had done, that he, (the witness,) had settled with some others of the creditors for the balance due them, after receiving what was coming under the composition agreement, and had some settlements of the kind with creditors who had not sued.

The only issue involving the question of fraud which was before the jury, was whether the plaintiffs or their assignors had been induced to enter into the composition by the fraudulent conduct, or representations of the defendant, and the evidence could only have been offered to support that issue. It is obnoxious to both objections raised by the appellee's counsel. It suggests to the jury a fact which they were not entitled to know, and which might be prejudicial on the issue, in support of which it

was not evidence, and it assumes as a fact that which only the record could prove. Independent of this objection, however, it was not legitimate evidence of fraud on the part of the defendant, at the *time* of the making the composition agreement, nor would the Court be justified in allowing the jury to consider it as evidence of fraud at all. Under the circumstances, if the defendant had made the settlements or offers imputed to him, he may have been prompted by the most honest of motives; or he may have thought, in view of a judgment, which to him may have appeared most unwarranted and unjust, that there was no escape, and he could be compelled to pay because of it. As motives, other than evil ones, most naturally suggest themselves as prompting such acts, it would be most gratuitous to ascribe them to consciousness of former fraudulent devices in the original procurement of the agreement. The possibility of such guilty knowledge prompting the conduct is entirely too remote, and the Court was right in rejecting the proffered proof. Finding no error in the rulings of the Circuit Court, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 12th March, 1880.)