LILLIAN T. LATTY, EXECUTRIX OF THE ESTATE OF S. D. LATTY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40484.   Promulgated July 27, 1931.

*John T. Scott, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* and *Frank J. Doudican, Esq.,* for the respondent.

OPINION.

STERNHAGEN: 1. The estate contends that the amount paid to decedent's daughter was a deduction in determining the net estate. Section 303 (a) (1) of the Revenue Act of 1924 governs. It permits the deduction of " claims against the estate * * * to the extent that such claims * * * were incurred or contracted bona fide and for a fair consideration in money or money's worth * * *," and the question is whether the amount represents such a claim.

There appears at once the question whether this is a " claim " within the contemplation of the Act. If one contracts in life to make a legacy or to permit property to descend by law, is the amount of such legacy or distribution a claim against the estate merely because it was contractually obligatory? Here the decedent agreed to provide a trust fund for his daughter either in life or after death. He failed to do so in life, so his estate became charged with the obligation. Instead of placing the money in trust, the executors paid the entire principal directly to the daughter. It may be doubted, without deciding, whether this was such a claim as was intended by the Act.

But passing that, and assuming that by virtue of the contract there was a claim against the estate, it may only be deducted if " incurred or contracted bona fide and for a fair consideration in money or money's worth." It is not suggested that there was any lack of bona fides, nor is there need to inquire whether the contract was valid or the consideration fair enough to support it. If the consideration

was not both fair and in money or money's worth, the claim is not deductible.

The consideration for the alleged claim was in essence merely a promise to refrain from claiming more. The daughter gave up no money and nothing which could be called moneys' worth. Her right to contest any will which her father might make was not the equivalent of cash to her or to any one else. To hold it to be a fair consideration in money's worth would not only shock the common understanding of ordinary language, but would frustrate the plain purpose of the statutory limitation of the deduction. There is no sense in taxing testamentary transfers and yet permitting the deduction of such sums as are transferred at death pursuant to a contract with a natural beneficiary who has agreed not to contest the will. Such a plan should only be found in clear, impelling language. The transfer is still testamentary and the primary object of the tax, and the tax is not to be reduced by calling it a claim based on an antecedent consideration.

The phrase " fair consideration in money or money's worth " appears not only in section 303, but several times in section 302, and to construe it broadly enough to cover the daughter's promise would result in defeating the clear purpose of its use throughout the Act.

2. The petitioner contends that no part of the amount of the insurance policies set forth in the findings is part of the decedent's gross estate. The argument is in substance the same as that rejected by the Supreme Court in *Chase National Bank* v. *United States*, 278 U. S. 327. For all that appears, the policies were subject to decedent's right until his death to change the beneficiary; and under such circumstances, the amount thereof in excess of $40,000 is by section 302(g) properly included in the gross estate. *H. T. Cook et al., Executors*, 23 B. T. A. 335.

3. The credit of 25 per cent on account of State inheritance tax will be adjusted.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

VAN FOSSAN, dissenting: I find myself in disagreement with the majority of the Board on the first point involved in this case. The question is whether or not the failure of the decedent to perform fully his agreement with his daughter gave rise to a valid, enforceable claim against his estate, the amount of which is deductible from the value of his gross estate.

Section 303 (a) (1) of the Revenue Act of 1924 is applicable to this question. Pursuant to that section the value of the decedent's

net estate is to be determined by deducting from the value of the gross estate certain items, specified in the section, including claims and indebtedness which were incurred or contracted "bona fide and for a fair consideration in money or money's worth."

The respondent does not contend that there was any lack of good faith in the agreement executed December 1, 1923, by the decedent and his daughter. He contends, however, that the decedent's obligations as set forth in the agreement were not supported by a fair consideration in money or money's worth.

Examination of the terms of the agreement discloses that the daughter not only contracted to make no further claims or demands against her father during his life or against his estate after his death, but also covenanted to "respect and abide by any last will and testament" executed by her father and not to enter into any suit "to contest any such will." On his part the decedent agreed to pay over for his daughter's benefit the sum of $50,000 and to pay her an income at the rate of $2,500 per year until such time as the principal sum should be paid by him.

While it is true that at common law a mere possibility could not be assigned, equity recognized the force of such agreements as the one now in question and gave them effect and validity. *In re Garcelon's Estate*, 104 Cal. 570; 38 Pac. 414. In Story's Equity Jurisprudence, vol. 2, sec. 1040(c), it is stated that:

The naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement, and in such case if made bona fide for a valuable consideration it will be enforced in equity after the death of the ancestor; not indeed, as a trust attaching to the estate but as a right of contract.

In *Brands* v. *De Witt*, 44 N. J. Eq. 544; 10 Atl. 181; 14 Atl. 894, the court held that:

An heir at law may for a sufficient consideration release to his father the share which he might have at the parent's decease in the latter's estate, either real or personal, so that he will thereby be estopped from establishing any claim thereto as one of the heirs at law or next of kin.

There has never been any question about agreements made between the heirs or next of kin and the representative of an estate, after the death of the testator, concerning compromises and settlements. These have always been sustained by the courts when made in good faith and not against public policy. *Moss* v. *Cohen*, 158 N. Y. 240; 53 N. E. 8; *Grochowski* v. *Grochowski*, 77 Neb. 506; 109 N. W. 742; *Seaman* v. *Colley*, 178 Mass. 478; 59 N. E. 1017. The present proceeding, however, is not such a case. In *In re Cook's Will*, 244 N. Y. 63; 154 N. E. 823, the court discussed the enforceability of an agreement essentially similar to the one in question in this proceeding. In that case the court said:

We are not here dealing with agreements made after the death of the testator, but agreements made before the death of the testator regarding the future disposition to be made of an estate and the claims of the parties thereto. Such agreements are akin to those implied in the taking of a legacy bequeathed upon the conditions stated in the will that no contest shall be made. Such provisions have been recognized as good. *Bradford* v. *Bradford*, 19 Ohio St. 546, 2 Am. Rep. 419; 2 Jarmon on Wills *902; 2 Redfield on Wills *298; *Smithsonian Institution* v. *Meech*, 169 U. S. 398; * * *. Every consideration of justice would demand that such an agreement fairly and openly made while the testatrix was alive, and relied upon in disposing of her property, should be supported.

Under the agreement in this proceeding the decedent's daughter, Helen Marie Latty, became as a stranger to his estate. In consideration of her father's promise she parted with a valuable right, namely, her right as heir and next of kin to endeavor, if she chose, by means of a contest of her father's will, after his death, to secure a large share of his estate, which, as the facts show, amounted to more than $900,000. Whether or not there were grounds for such a contest is a question of no moment. The right to contest her parent's will after his death was of itself a right of value, *Sheppy* v. *Stevens*, 185 Fed. 147; *In re Polhemus' Estate*, 145 N. Y. S. 1107, and in my opinion the surrender of this right by the daughter constituted a fair consideration in money or money's worth to support the promise made by the decedent. *Ferguson* v. *Dickson*, 300 Fed. 961.

For the foregoing reasons I am of the opinion that, because of the decedent's failure to perform the terms of the agreement on his part to be performed, there arose an enforceable claim against the decedent's estate for the sum of $50,000 with interest. Since the executrix settled this claim by its payment in full, the amount thereof is deductible from the gross estate of the decedent under the provisions of section 303 (a) (1) of the Revenue Act of 1924.

For these reasons I must dissent from the conclusion reached.